IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| ROBERT D. THOMPSON, <br><br> Plaintiff, <br><br> v. <br><br> NAVAL ACADEMY ATHLETIC ASSOCIATION, *et al.*, <br><br> Defendants. | Civil Action No. 12-cv-02676-RDB |

MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL DISMISSAL

Defendants Naval Academy Athletic Association and Chester S. Gladchuk, Jr., through their undersigned counsel, submit this Memorandum in Support of their Motion for Partial Dismissal, and state as follows:

INTRODUCTION

Plaintiff Robert D. Thompson ("Plaintiff") has filed this civil action against the Naval Academy Athletic Association (the "NAAA"), Chester S. Gladchuk, Jr. ("Gladchuk"), who serves as President of the NAAA, and Vice Admiral Michael, H. Miller, USN, who serves as Superintendent of the United States Naval Academy (the "USNA"). Plaintiff asserts claims arising out of the termination of an alleged written contract that he had with the NAAA and USNA to provide marketing services to those organizations. Specifically, Plaintiff asserts the following claims against the Defendants: (1) breach of contract, (2) violation of the Maryland Wage Payment and Collection Law (the "MWPCL"), and (3) breach of the implied covenant of good faith and fair dealing.

As explained in detail below, with the sole exception of the breach of contract claim against the NAAA, all of the claims against the NAAA and Gladchuk are legally defective and must be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, the breach of contract claim against Gladchuk must be dismissed because Gladchuk was not a party to the written contract in question. The claims under the MWPCL must be dismissed because there was no employment relationship between Plaintiff and either the NAAA or Gladchuk, and because the moneys that Plaintiff seeks under the contract are not "wages" within the meaning of the MWPCL, both of which are pre-requisites to a claim under the MWPCL. Finally, the claim alleging a breach of the implied covenant of good faith and fair dealing must be dismissed because Maryland does not recognize a cause of action for a breach of that duty, which is implied in all contracts.

## STATEMENT OF FACTS

The following facts are alleged in the Complaint or contained in the attached Contract (Ex. 1), and are assumed true for the purpose of this Motion:

Plaintiff is an individual who allegedly contracted with the NAAA and the USNA, as further described below. (Cp. ¶ 5). The NAAA is a non-profit association that operates the intercollegiate athletic programs of the USNA. (*See generally* Ex. 1). Gladchuk is the President of the NAAA. (Cp. ¶ 8). The remaining Defendant, Vice Admiral Miller, is the Superintendent of the USNA. (Cp. ¶ 7).

According to the Complaint, on May 1, 2006, Plaintiff entered into a written contract with the USNA and the NAAA to provide a range of marketing services to those entities. (Cp. ¶ 14; Ex. 1 p.1). On October 30, 2008, the parties to the contract entered into a subsequent written contract, which replaced the initial contract and ran for a period of three years, until

October 31, 2011. (Cp. ¶ 16; Ex. 1 p.1). On October 29, 2010, the parties executed a third written contract (the "Contract"), which ran for a period of three years, until October 31, 2013. (Cp. ¶ 17; Ex. 1 p.1). That third written contract (the "Contract") is attached hereto as **Exhibit 1**.[1] The language of the Contract made clear that it superseded and replaced the 2008 written contract. (Ex. 1 p.1).

The Contract generally described the marketing services that Plaintiff was to provide thereunder. (*Id.*, §§ III-IV). It further stated that Plaintiff would be paid a fixed amount each month as compensation for his Contract services. (*Id.*, § V). Lastly, the Contract stated that "either party shall have the right to terminate this Agreement for any reason upon one hundred eighty (180) days written notice to the other." (*Id.*, § VIII).

Plaintiff alleges that from May 2006 to May 2011, he "fulfilled his contractual obligations to USNA and NAAA" and provided services under the Contract and its predecessor written agreements. (Cp. ¶ 21).

However, on May 20, 2011, Plaintiff was notified by the USNA Acting Deputy for Finance that the Contract was terminated and that no further work should be performed. (Cp. ¶ 24). Plaintiff alleges that he was not paid on invoices for months following the termination of the Contract. (Cp. ¶ 26). In other words, it appears that Plaintiff alleges that he was not paid moneys during the 180-day period after he received notice of the Contract's termination.

---

[1] Although the Contract is not attached to the Complaint, the Court may consider the Contract in ruling on this Motion to Dismiss, *without* converting this Motion into a summary judgment motion under Fed. R. Civ. P. 12(d) and 56, because the Contract is "integral to and explicitly relied on in the complaint." *Phillips v. LCI Internat'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Abadian v. Lee*, 117 F. Supp.2d 481, 485 (D. Md. 2000) (in ruling on motion to dismiss, "court may also consider documents referred to in the complaint and relied upon in bringing the action"). While the Contract is attached as an exhibit to and discussed in this Motion, the NAAA and Gladchuk do not concede the legality or effectiveness of the Contract or that it bound them in any way.

3

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss claims in a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss filed under Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, factual allegations must be sufficient "to raise a right to relief above a speculative level." *Id.* In ruling on the motion, the Court must consider all well-pled allegations in the Complaint as true and must construe factual allegations in the light most favorable to the plaintiff. *See Lambeth v. Bd. of Comm'rs of Davidson County*, 407 F.3d 266, 268 (4th Cir. 2005). The court need not, however, accept legal conclusions, conclusory allegations devoid of any reference to actual events, or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002). To survive a motion to dismiss, the plaintiff must sufficiently plead each element of his claims. *Keplin v. Maryland Stadium Authority*, 2008 WL 5428082, *2 (D. Md. 2008) (citing *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 346-47 (4th Cir. 2006)).

## CLAIMS IN COMPLAINT

The Complaint contains two unlabeled counts, as follows:

Count 1 alleges that the Defendants "[b]reached Plaintiff's contract to provide services to USNA and NAAA, and did so, inter alia, in violation of the Maryland Wage Payment and Collection Law." (Cp. ¶ 36). Count 2 alleges that the Defendants "[b]reached the Implied Covenant of Good Faith and Fair Dealing …." (*Id.*)

Construing the Complaint liberally in favor of Plaintiff, the NAAA and Gladchuk interpret those two Counts as raising three separate claims: (1) breach of contract, (2) violation of

4

the Maryland Wage Payment and Collection Law, and (3) breach of the implied covenant of good faith and fair dealing. Because the Complaint does not specify which of the three Defendants are named as defendants in each claim, the NAAA and Gladchuk will assume, for the purpose of this Motion, that each Defendant is named in all of the foregoing three claims.

## ARGUMENT

A. **THE BREACH OF CONTRACT CLAIM AGAINST GLADCHUK MUST BE DISMISSED.**

To the extent that the Complaint raises a breach of contract claim against Gladchuk, it must be dismissed for the simple reason that Gladchuk is not a party to the Contract.

It is elementary that a party cannot be sued for breach of contract unless he is a party to that contract. *Mowbray v. Zumot*, 533 F. Supp.2d 554, 564 (D. Md. 2008) ("a person cannot be held liable under a contract to which he was not a party" (quoting *Snider Bros. Inc. v. Heft*, 317 A.2d 848, 851 (Md. 1974))); *Horlick v. Capital Women's Care, LLC*, 2011 U.S. Dist. LEXIS 130894, *37 (D. Md. 2011) (same). The Contract is clear that only Plaintiff, the NAAA and the USNA purport to be parties to it. It states: "This will serve as the basic Letter of Agreement between the Naval Academy Athletic Association ('NAAA') / United States Naval Academy ('NAAA/USNA') and Robert D. Thompson ('Thompson') ...." (Ex. 1, p.1). Gladchuk is not mentioned in the Contract, by name or by title, and he did not sign it. (Ex. 1). Moreover, the Complaint does not allege that Gladchuk was a party to the Contract or to any contract whatsoever with Plaintiff; it alleges only that "Plaintiff entered into a contract ... with USNA and NAAA ...." (Cp. ¶ 14).

Accordingly, because Gladchuk is not a party to the Contract or to any contact with Plaintiff, any breach of contract claim against him is legally defective and must be dismissed.

B.  **THE CLAIM UNDER THE MARYLAND WAGE PAYMENT AND COLLECTION LAW MUST BE DISMISSED.**

Count 1 alleges that the Defendants' breach of the Contract constituted a violation of the Maryland Wage Payment and Collection Law, MD. CODE ANN., LABOR & EMP. § 3-501, *et seq.* (the "MWPCL"). As explained below, the MWPCL claim is legally defective and must be dismissed for two independent reasons: (1) there was no employment relationship between Plaintiff and either the NAAA or Gladchuk, and (2) the moneys that Plaintiff claims under the Contract are not "wages" within the meaning of the MWPCL.

1.  **The MWPCL Claim Fails Because There Was No Employment Relationship Between Plaintiff And Either The NAAA Or Gladchuk.**

    a.  **The Complaint Fails To Allege That Plaintiff Was An Employee. Rather, the Complaint And Contract Establish That He Was An Independent Contractor.**

The MWPCL provides requirements for pay periods, form of payment, permissible deductions and payment of wages upon termination of employment. MD. CODE ANN., LABOR & EMP. § 3-501, *et seq.* Among other provisions, it states that "each employer shall pay an employee ... all wages due for work that the employee performed before the termination of employment ...." *Id.*, § 3-505(a). The MWPCL permits an employee to bring a civil action against his employer for a violation thereof. *Id.*, § 3-507.1.

As the express language of the MWPCL makes clear, application of the MWPCL is predicated on an employment relationship—*i.e.*, only an "employer" has obligations under that law, and only an "employee" has protections and may bring an action under it. The MWPCL defines "employer" as "any person who employs an individual in the State or a successor of the person." *Id.*, § 3-501(b). The MWPCL does not define the term "employee." However, courts have made clear that "the use of the word 'employee' in the statute was meant to distinguish

6

between independent contractors and servants of the employer." *Horlick v. Capital Women's Care, LLC*, 2011 U.S. Dist. LEXIS 130894, *17 (D. Md. 2011); *Baltimore Harbor Charters, Ltd. v. Ayd*, 780 A.2d 303, 315 (Md. 2001). An "employee" under the MWPCL "is one who would be considered an agent or employee, as opposed to an independent contractor, at common law." *Horlick*, 2011 U.S. Dist. LEXIS 130894, *17; *Ayd*, 780 A.2d at 315.

The MWPCL claim must be dismissed because the Complaint fails to allege an employment relationship between Plaintiff and any of the Defendants, and in fact, it is clear that Plaintiff was not an employee of any Defendant. Both the Complaint and the Contract belie an employment relationship but rather make clear that the relationship was that of an independent contractor. The Complaint states that Plaintiff served as a "marketing consultant" pursuant to three written contracts (Cp. ¶ 5) and that he entered into those contracts "to provide a range of marketing services" to both the USNA and NAAA. (Cp. ¶ 14). Indeed, the Complaint makes numerous references to Plaintiff's contracts with the USNA and NAAA, making clear he was a contractor. Likewise, the Contract made no mention of an employment relationship. (Ex. 1). It too referred to Plaintiff's services as "consulting services" (Ex. 1 ¶ II), and it described the relationship as a "consulting relationship." (Ex. 1, ¶ IV.A.). It also stated that Plaintiff shall perform those consulting services from Plaintiff's own office. (Ex. 1 ¶ II). On the whole, it made clear that it was simply a contract to provide services, not an employment contract.

Because Plaintiff was not an employee of any Defendant, the MWPCL claim against the NAAA and Gladchuk is legally defective and must be dismissed.

        b.      **In Addition, As President Of The NAAA, Gladchuk Was Not Plaintiff's "Employer" As A Matter Of Law.**

To the extent that the Complaint intends to assert an MWPCL claim against Gladchuk, the facts and allegations are even clearer than with respect to the NAAA that an employer-

7

employee relationship did not exist between Plaintiff and Gladchuk. Thus, even in the unlikely event that Plaintiff could state facts suggesting an employment relationship with the NAAA, any MWPCL claim against Gladchuk still must be dismissed because Gladchuk was not Plaintiff's "employer" as a matter of law. The MWPCL definition of "employer," quoted above, is afforded its "commonly understood meaning," which contemplates a "contractual relationship involving the payment of wages in exchange for services." *Watkins v. C. Earl Brown, Inc.*, 173 F. Supp.2d 409, 414, 416 (D. Md. 2001).

Here, there clearly was no contractual relationship between Plaintiff and Gladchuk personally for the provision of services in exchange for compensation. As noted above, the only parties to the Contract were Plaintiff, the NAAA and the USNA (Cp. ¶ 14; Ex. 1 p.1), and it is clear from the Complaint that any services provided by Plaintiff thereunder were provided to those entities, not to Gladchuk personally. (*See* Cp. ¶ 14 (Plaintiff contracted to provide services "to both entities"); ¶ 21 (Plaintiff fulfilled contractual obligations "to USNA and NAAA")). Certainly, there was no expectation that Gladchuk personally bore a responsibility to pay moneys to Plaintiff.

Indeed, courts have rejected any interpretation of the MWPCL definition of "employer" that would encompass officers, managers or other individuals acting on behalf of corporate or organizational employers. *See Watkins*, 173 F. Supp.2d at 416 (individual manager is not employer under MWPCL); *Hosack v. Utopian Wireless Corp.*, 2011 U.S. Dist. LEXIS 48687, *11-12 (D. Md. 2011) (same); *see also, Magee v. Dan Sources Technical Services, Inc.*, 769 A.2d 231, 235 n.2 (Md. App. 2001) (noting that plaintiff abandoned MWPCL claim against company president and controlling shareholder because that person "was not [plaintiff's] employer"). For this additional reason, any MWPCL claim against Gladchuk must be dismissed.

2. **The MWPCL Claim Fails Because The Moneys Sought By Plaintiff Are Not "Wages" Under The MWPCL.**

The MWPCL claim also fails because any moneys sought by Plaintiff under the Contract are not "wages" within the meaning of the MWPCL. Although the MWPCL claim is not clearly pled, it appears that the only moneys that Plaintiff is seeking under the Contract are moneys for the 180-day period following the Contract termination—*i.e.*, the time during which notice of termination was to be given. In other words, Plaintiff appears to claim that because the Defendants terminated the Contract on May 20, 2011, effective immediately (Cp. ¶ 24), without giving him the 180 days notice of termination required in the Contract (Ex. 1, § VIII), he is seeking under the MWPCL the money that he should have received during that 180-day period. Those moneys are not "wages" because they were not to be paid as compensation for services that Plaintiff provided; they are simply contract damages that are not covered by the MWPCL.

The MWPCL defines "wage" as "all compensation that is due to an employee for employment," and that definition expressly includes: "(i) a bonus; (ii) a commission; (iii) a fringe benefit; (iv) overtime wages; or (v) any other remuneration promised for service." MD. CODE ANN., LABOR & EMP. § 3-501(c). The Maryland courts have made clear that "'it is the exchange of remuneration for the employee's work that is crucial to the determination that compensation constitutes a wage.' Put another way, in order to be considered 'wages,' the subject payment must be due for work the employee actually performed." *Horlick*, 2011 U.S. Dist. LEXIS 130894, *19 (quoting *Provident Bank of Maryland v. McCarthy*, 383 F. Supp.2d 858, 860 (D. Md. 2005)).

To the extent that Plaintiff seeks moneys that he claims should have been paid to him during the above-described 180-day notice period, those moneys are not "wages" under the MWPCL. That was held in *Horlick*, 2011 U.S. Dist. LEXIS 130894. In *Horlick*, a physician

entered into an employment contract that stated that the employer could terminate the agreement on 90 days written notice to him or payment of salary for such period in lieu of notice. *Id.* at *4. The employer terminated the employment contract before the physician started work and paid no moneys under the contract. The physician sued under the MWPCL for the salary that he claimed he should have received for that 90-day notice period. This Court held that those moneys were not "wages" under the MWPCL, and thus dismissed the MWPCL claim, because those moneys were not promised in exchange for work actually performed by the physician. *Id.* at *28-29.

Although the physician contract in *Horlick* was terminated before the physician started work, the fact that Plaintiff's Contract in this case was terminated after he performed services under the Contract does not compel a different result. As in *Horlick*, the moneys that are claimed for the 180-day notice period are not being sought as compensation for work that Plaintiff actually performed, since the Complaint acknowledges that Plaintiff was directed to stop work immediately and that he did not perform any work during that 180-day notice period. (*See* Cp. ¶ 24).

In fact, *Horlick* cited approvingly an Iowa case, *McClure v. International Livestock Improvement Services Corp.*, 369 N.W.2d 801 (Iowa 1985), which addressed facts virtually identical to this case. In *McClure*, an employer and employee entered into a written employment contract which either party could terminate on 30 days written notice to the other. *Id.* at 802. The employer terminated the contract effective immediately and paid the employee no money for the 30-day notice period, whereupon the employee sued the employer under the Iowa Wage Payment Collection Law (the "Iowa Wage Law") for the 30 days' pay that he claimed was due him for that notice period. *Id.* at 802-03. The Iowa Supreme Court held that the foregoing notice period pay did not constitute "wages" under the Iowa Wage Law, which, like the

10

MWPCL, defined "wages" as compensation "owed" to an employee for "services rendered." *Id.* at 804-05. The court held that the amount due for the 30-day notice period was not compensation due for services "rendered" but rather was simply a claim for contract damages. *Id.* Notably, this Court in *Horlick* found *McClure* to be persuasive because it correctly found that the Iowa Wage Law was substantially similar to the MWPCL, since both laws define "wage" as compensation for services actually performed. *Horlick*, 2011 U.S. Dist. LEXIS 130894, *24-25.

As in *Horlick* and *McClure*, any moneys allegedly due Plaintiff as a result of the alleged failure to provide 180 days notice of termination of the Contract are not "wages" under the MWPCL but rather are simply contract damages. Accordingly, the MWPCL claim must be dismissed for this reason as well.

C. THE CLAIM ALLEGING A BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING MUST BE DISMISSED.

Count 2 of the Complaint, which raises a claim that the Defendants breached the implied covenant of good faith and fair dealing, must be dismissed because Maryland does not recognize an independent cause of action for a breach of that duty.

"Maryland law recognizes that every contract imposes a duty of good faith and fair dealing in its performance." *Abt Associates v. JHPIEGO Corp.*, 104 F. Supp.2d 523, 534 (D. Md. 2000), *aff'd*, 9 Fed. Appx. 172 (4th Cir. 2001); *see also, Food Fair Stores, Inc. v. Blumberg*, 200 A.2d 166, 173-74 (Md. 1964) ("In every contract there exists an implied covenant that each of the parties thereto will act in good faith and deal fairly with the others.").

However, it is well-settled that Maryland does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing. *Mount Vernon Props., LLC v. Branch Banking & Trust Co.*, 907 A.2d 373, 381-82 (Md. App. 2006) ("we conclude that no

independent cause of action at law exists in Maryland for breach of the implied duty of good faith and fair dealing"), *cert. denied*, 918 A.2d 469 (Md. 2007); *Corporate Healthcare Fin., Inc. v. BCI Holdings Co.*, 444 F. Supp. 2d 423, 434 (D. Md. 2006) (same); *Swedish Civil Aviation Admin. v. Project Mgm't Enterprises, Inc.*, 190 F. Supp.2d 785, 793-94 (D. Md. 2002) (same); *Eaglehead Corp. v. Cambridge Capital Group, Inc.*, 170 F. Supp. 2d 552, 562 (D. Md. 2001) (same); *Abt Associates*, 104 F. Supp.2d at 534 (same); *Baker v. Sun Co., Inc.*, 985 F. Supp. 609, 610 (D. Md. 1997) (same). Rather, an alleged breach of that implied duty is simply part of a breach of contract claim. *See Swedish Civil Aviation Admin.*, 190 F. Supp.2d at 794 ("this duty is merely part of an action for breach of contract"); *Mount Vernon Props.*, 907 A.2d at 381-82 ("A breach of the implied duty of good faith and fair dealing is better viewed as an element of another cause of action at law, *e.g.*, breach of contract, than as a stand-alone cause of action ....").

Because Maryland does not recognize a cause of action for breach of this implied duty, dismissal for failure to state a claim under FED. R. CIV. P. 12(b)(6) is mandated. *See Eaglehead Corp.*, 170 F. Supp.2d at 562 (dismissing claim under Rule 12(b)(6)); *Swedish Civil Aviation Admin.*, 190 F. Supp.2d at 794 (same).

## CONCLUSION

For the foregoing reasons, the breach of contract claim against Gladchuk and the claims against the NAAA and Gladchuk for violation of the Maryland Wage Payment and Collection Law and for breach of the implied covenant of good faith and fair dealing must be DISMISSED for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/
Charles Kresslein (Fed. Bar No. 22967)

JACKSON LEWIS LLP
2800 Quarry Lake Drive, Suite 200
Baltimore, Maryland 21209
Phone: (410) 415-2000
Fax: (410) 415-2001
charles.kresslein@jacksonlewis.com

Counsel for Defendants,
*Naval Academy Athletic Association and Chester S. Gladchuk, Jr.*

4832-2844-7761, v. 3