IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT D. THOMPSON, | : |
| Plaintiff, | : |
| v. | : Civil No. RDB 12-2676 |
| NAVAL ACADEMY ATHLETIC ASSOCIATION, *et al.*, | : |
| Defendants. | : |

...o0o...

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PARTIAL DISMISSAL

### PRELIMINARY STATEMENT

Plaintiff, Robert D. Thompson ("Plaintiff") submits this Memorandum of Law in opposition to the motion of the Defendants, Naval Academy Athletic Association ("NAAA") by and through its President, Chester S. Gladchuk, Jr. ("Gladchuk") as an employee of NAAA (collectively "the Defendants"), to partially dismiss the Complaint pursuant to Federal Rules of Civil Procedure *("FRCP") §12(b)(6 )* for failure to "state a claim upon which relief can be granted." The motion should be denied for the reasons set forth herein.[1]

### STANDARD OF REVIEW

Defendants move to dismiss the action on the basis of FRCP §*12(b)(6)*, for failure to state a claim upon which relief can be granted. "A motion to dismiss under *Rule 12(b)(6)* tests

---

[1] We respond directly, where appropriate, to specific pages of Defendants' Memorandum of Law, hereinafter referred to as "MOL."

1

the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Martin, 980 F.2d at 952 (internal quotations* omitted). The court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Id.*

A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).* "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element"  does not "impose a probability requirement at the pleading stage."  *Id.*  Instead, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element. *Id.*  "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.' " *Id.*

In this case it is alleged, and indisputable, a Contract existed whereby Plaintiff would perform duties for the Defendants.*(Complaint #14 -17).* It is indisputable the Plaintiff performed those duties.*(Complaint #14-21).*  It is indisputable the Contract resulted in unprecedented and enduring benefits to the Defendants.  ***Exhibit 1** (TV Articles)**; Exhibit 2** (USA TODAY).*   It is indisputable that the Contract was breached. *(Complaint #26-34).*  It is now for a jury to decide whether the breach and shocking bad faith described in the Complaint

2

warrant the relief requested.

## PLAINTIFF'S BREACH of CONTRACT CLAIM IS COGNIZABLE

### Breach of Contract

Defendants argue that Gladchuk, the President of NAAA, was not a party to the Contract. *MOL pg. 5.* However, *"*[t]he President may delegate any duties to any other officer of the Association but shall remain responsible for their fulfillment." **Exhibit 3** *(What is The Naval Academy Athletic Association? www.navysports.com/ot/what-is-naaa The Constitution Article IX Section 9.4.1).*

A person may be deemed an agent based on actual authority or apparent authority. Actual authority exists only when "the principal knowingly permits the agent to exercise the authority or holds out the agent as possessing it." H*oma v. Friendly Mobil Manor 93 MD. App. at 360, 612 A.2d 322.* Actual authority may be express or implied. *See Medical Mut. Liab. V. Mutual Fire, 37 Md. App. 706, 712, 379 A.2d 739 (1977) ("*The relation of principal and agent does not necessarily depend upon an express appointment and acceptance thereof, but it may be implied from the words and conduct of the parties and the circumstances."). *See also Helsop v.Dieudonne, 209 Md. 201,206, 120 A.2d 669 (1956).*

Here, the Contract was executed on behalf of NAAA by the Chairman of NAAA's Finance and Compensation Oversight Committee. *(See MOL Exhibit 1)* Additionally, the Treasurer of NAAA, who reported directly to Gladchuk, signed and issued monthly payments for five years to Plaintiff in accordance with the Contracts. **Exhibit 4** *(Invoice Process);* **Exhibit 5** *(Check).* The individuals executing the Contract and paying the invoices (and not paying) were agents, clearly acting with actual authority from Defendant Gladchuk. Finally, as indisputable evidence of control, Defendant Gladchuk personally determined to breach the Contract. (*See*

3

*Complaint #26).*

"Apparent authority is defined as the power to affect the legal relations of another person by transactions with a third person arising from the other person's manifestations to the third person. Thus, apparent authority of an agent results from statements, conduct, lack of ordinary care, or other manifestations of the principal's consent, whereby a third person is justified in believing that the agent is within his authority. Apparent authority may be implied where the principal passively permits the agent to appear to a third person to have authority to act on his behalf." *Homa 93 MD. App. at 360, 612 A.2d 322. (quoting) 3 Am. Jur.  2d Agency.*

"The party seeking to rely on the agency relationship based upon apparent authority must establish (1) that the principal has manifested his consent to the exercise of his authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearances of authority has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal." H*oma v. Friendly Mobil Manor 93 MD. App. at 360, 612 A.2d 322.*

Plaintiff Thompson risked his career trusting that the principals, including Gladchuk, were acting in good faith and would stand honorably behind the authority delegated.
 [T]he existence of an agency relationship is a question of fact. *Helsop, 209 Md. 201,206, 120 A.2d 669 (1956).*

As noted in Progressive Casualty Insurance Company v. Ehrhardt  " even if the underwriter acted completely without authority, Progressive can nevertheless be liable if it ratifies the agent's conduct." 69 Md. App. 431, 44, 518 A.3d 151,156 (citing Linden Holmes v. Larkin, 231 Md. 566, 570. 191 A.2d 441, 442 (1963); Bruffey Contracting Co. v. Burroughs

4

Corp., 522 F.Supp. 769, 774 (D. MD. 1981), affd. 681 F.2d 812 (4th Cir. 1982); Restatement (Second) Agency 93 (1958); 2 Am. Jur.2d, Agency 182, at 683-84 (1986). "Intention to ratify may be inferred by words, conduct or silence on the part of the principal." *Id. at 442.*

The Contract took into account the "vital role Thompson has played in first proposing and then drafting the marketing strategy and the sales presentations that ultimately produced the 10-year/ 8-figure first-ever Presenting Sponsorship for the Army-Navy Football Game (USAA) and the first-ever multi-year Participating/ Gold Sponsor of the Game (GM)." *MOL Exhibit 1.* Even though the Defendants so abrasively terminated both the relationship and the Contract, the benefits of Plaintiff's employment and work are enduring.  *See* **Exhibits 1 & 2.** Obviously, the President of the NAAA, Defendant Gladchuk, was aware of and ratified the Contract, and continues to enjoy the ongoing and increasing benefits accruing from the Contract.

**Violation of Maryland Wage Payment and Collection Law**

    **1. Plaintiff Was an Employee**

Defendants argue the "Complaint and Contract belie an employment relationship" because both describe the work done as marketing consulting services. However, as Defendants point out, the MWPCL does not define "employee." *MOL page 6.*

A servant is a person employed to perform services in the affairs of another. *Restatement (Second) of Agency* § *220 (1958).* The word "employee" has largely displaced "servant." *Id.* "[P]ersons working at home at piece rates and choosing their own time for work have been held to be employees." *Id.* "The time of employment and the method of payment are important. If the time of employment is short, the worker is less apt to subject himself to control [and ] the job is more likely to be considered his job than the job of the one employing him." *Id .* It is for the trial court to determine whether the plaintiff was within the common law

definition of employee based on the extent of one party's right to control the performance of another.  *Darden v. Nationwide Ins. Co. 796 F.2d 701, 705.*

Plaintiff Thompson had been working for USNA/NAAA for five years. (*Complaint #14-17*). The scope of Plaintiff's employment included any marketing needs NAAA/USNA may have and contributing toward "better integrating the marketing activities of the various departments within USNA." *MOL Exhibit 1 Scope of Work.*  The Primary area of focus was "sponsorship design, development, marketing and sales for NAAA…..[c]onsistent with the work Thompson has rendered to date in the branding and marketing of the Army-Navy Football Game ("America's Game") …and in direct support of the Senior Associate Athletic Director – Corporate Sales." *Id. Primary Area of Focus*.  Unquestionably, Plaintiff was under the control of Gladchuk/NAAA and thus an employee.

**2.  The Moneys Sought are for Accrued Bonus and are Wages under MWPCL**

Defendants point out the Maryland Wage Payment Claims Law's (" MWPCL") definition of "wage" include a bonus and any other remuneration for service. *MOL page 9-11. See also MD. CODE ANN., LABOR & EMP. 3-501 (c).*  Plaintiff agrees.  Defendants argue this Court found the MWPCL defines "wage" as compensation for services actually performed. *MOL page 9-11.* Plaintiff agrees.  Plaintiff has alleged he was due a bonus for services rendered prior to the Contract breach and the bonus is therefore a wage under Defendants' argument.  (See Complaint #28).

Defendants breached the Contract when they did not give Plaintiff "one hundred eighty (180) days written notice" of termination.  *MOL Exhibit 1 page 5 RENEWAL/TERMINATION.*  Additionally, Defendants did not pay Plaintiff's settlement of bonus due under his Contract for work previously performed.  His three-year Contract for $17,500 per month (and paid monthly) took into account that Thompson had agreed "to waive

6

significant bonuses that otherwise accrued during the terms of the two (2) prior agreements." *(MOL Exhibit 1 LETTER AGREEMENT BETWEEN NAAA/USNA AND R.D. THOMPSON)*. In other words, there was an Agreement to swap bonus for term. The term was for thirty-six (36) months at $17,500 per month, $630,000 in total. Any severance package would equate to the balance of the Contract due and for bonuses previously earned. It is for this severance, reflecting the bonuses previously earned, that Plaintiff asks for relief under MWPCL. [2]

*Gresham v. Lumbermen's Mutual Casualty Co., 404 F.3d 253 (4th Cir. 2005)* is analogous to Plaintiff's claim in that a breach of contract claim was accompanied by a violation of Maryland Wage Payment and Collection Act ("WPA"). The WPA is designed to protect employees from wrongful withholding of wages by employers upon termination. *Id. at 323.* "Section 3-505 of the WPA provides that each employer shall pay a terminated employee all wages due for work that the employee performed before termination. *MD. Labor & Employ. Code Ann. § 3-505.* Wages are defined as 'all compensation that is due to an employee for employment' and include a bonus, commission, fringe benefit, or '[a]ny other remuneration promised for service.' *MD. Labor & Employ. Code Ann. § 3-501 ( c)."* Id.

The Gresham Court goes on to answer whether such a severance pay constitutes wages by citing *Whiting-Turner Constructing Co. v. Fitzpatrick, 366 Md. 295, 783 A.2d 667, 672-673 (2001).* "[T]he Maryland Court of Appeals stated that '[o]nce a bonus, commission, or fringe benefit has been promised as part of the compensation for service, the employee would be entitled to its enforcement as wages.' The following year, summarizing the Whiting-Turner test, the Court of Appeals explained: '[i]t is the exchange of the remuneration for the

---

[2]  Defendants' breach therefore had the calculated win/win/win/win effect for Defendants of not paying Plaintiff Thompson his salary due, not paying the bonus he had earned prior, receiving future benefits indefinitely without future cost, while eliminating any acknowledgement of Plaintiff's contributions or existence.

employee's work that is crucial for the determination that compensation constitutes a wage." *404 F.3d at 324.* Discretionary damages (treble under WPA) "is for the trier of fact [i.e. the jury in a case where a jury trial has been requested] to determine." *Admiral Mortgage, Inc. v. Cooper, 357 Md. 533, 745 A.3d. 1026, 1032 (2000).*

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

Next, Defendants argue Maryland does not recognize an independent cause of action for a breach of the implied covenant of good faith and fair dealing. Actually, "the Maryland Court of appeals has never explicitly stated that there is no cause of action for the implied covenant of good faith and fair dealing." *Froelich v. Erickson, 96 F. Supp. 2d 507, 502 (D. Md. 2000, aff'd sub. Nom., 246 F 3d 664 (4th Cir. 2001). See also Quality Automotive Co. v. Signet Bank/Md.,* 775 F. Supp. 849 (D. Md. 1991) (finding existence of independent cause of action), *per curiam off'd,* 983 F.2d 1057, 1993 WL 7921 (4 Cir. Jan. 15, 1993) (refusing to overturn the district court's holding and deferring to Maryland state courts); *Greenway Investments G.P. v. Signet Bank/Md.,* 991 F.2d 789, 1993 WL 104668, *4 n. 9 (4 Cir. Apr. 9, 1993) ("[i]t is not clear whether Maryland recognizes an independent cause of action for breach of the implied duty of good faith").

In any event, as even Froelich noted, "[i]n every contract, Maryland recognizes an implied covenant of good faith and fair dealing." 96 F.Supp.2d at 522. We leave it to this Honorable Court therefore to determine whether the breach of implied covenant of good faith and fair dealing be a separate Claim or part of the Contract breach in Count One.

**CONCLUSION**

"Certainly, when I lectured there [USNA], I made it clear that honor is our stock and trade, the people you work for… don't care what you know, they just want to know they can trust you. Honor and trust are centerpieces."   *What is The Honor Code by Jacqui Murray, February 3, 2011, Examiner.com (quoting Dick Couch).*

                                                Respectfully submitted,

                                                Timothy M. Cohane

                                                _____

                                                Timothy M. Cohane
                                                Attorney for Plaintiff
                                                106 Harrison Avenue
                                                Newport, Rhode Island 02840
                                                (401) 855-5106

.