IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT D. THOMPSON, | * | |
| Plaintiff, | * | |
| v. | * | |
| NAVAL ACADEMY ATHLETIC ASSOCIATION; CHESTER S. GLADCHUK, JR., PRESIDENT OF THE NAVAL ACADEMY ATHLETIC ASSOCIATION, individually and in his official capacity; & VICE ADMIRAL MICHAEL H. MILLER, SUPERINTENDENT OF THE UNITED STATES NAVAL ACADEMY, individually and in his official capacity, | * | Civil Action No. RDB-12-2676 |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Robert D. Thompson ("Plaintiff" or "Thompson"), initially *pro se*,[1] brought this action against Defendants Naval Academy Athletic Association ("Athletic Association"); Vice Admiral Michael H. Miller, Superintendent of the United States Naval Academy ("Vice Admiral Miller"), individually and in his official capacity; and Chester S. Gladchuk, Jr., President of the Naval Academy Athletic Association ("President Gladchuk"), individually and in his official capacity. *See* Compl. ¶¶ 6-8, ECF No. 1. Plaintiff alleges that Defendants "[b]reached Plaintiff's contract to provide services to [the United States Naval Academy and the Athletic Association], and did so, inter alia, in violation of the Maryland Wage Payment

---

[1] Plaintiff filed the Complaint (ECF No. 1) *pro se*, but has been represented by an attorney in all subsequent filings.

1

and Collection Law [("MWPCL")]." *Id.* ¶ 36. He further alleges that Defendants "[b]reached the Implied Covenant of Good Faith and Fair Dealing."[2] *Id.* Currently pending before this Court is the United States' Motion to Substitute itself for Defendant Vice Admiral Miller and to Dismiss all claims against both parties (ECF No. 10). Also pending are Defendants Athletic Association and President Gladchuk's Motion to Dismiss all claims against them, except for the breach of contract claim against the Athletic Association (ECF No. 11), and Plaintiff's Motion to File a Surreply to the Motion for Partial Dismissal (ECF No. 25).

The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the United States' Motion to Dismiss and Substitute (ECF No. 10) is GRANTED; the Motion for Partial Dismissal (ECF No. 11) filed by Defendants Naval Academy Athletic Association and President Chester S. Gladchuk, Jr. is GRANTED; and Plaintiff Robert D. Thompson's Motion to File a Surreply (ECF No. 25) is DENIED. Accordingly, all claims against Defendants United States and Vice Admiral Michael H. Miller, are DISMISSED. Additionally, all claims against President Chester S. Gladchuk, Jr. are DISMISSED, and the Maryland Wage Payment and Collection Law claim and claim for breach of the implied covenant of good faith and fair dealing against Defendant Naval Academy Athletic Association are DISMISSED. Plaintiff Robert D. Thompson's single claim for breach of contract against Defendant Naval Academy Athletic Association remains pending.

---

[2] Construing the Complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court assumes that Plaintiff raised three independent claims, each against all three of the Defendants–breach of contract, violation of the Maryland Wage Payment and Collection Law, and breach of the implied covenant of good faith and fair dealing.

2

**BACKGROUND**

In ruling on the Defendants' Motions to Dismiss, this Court accepts as true the facts alleged in Plaintiff's Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Moreover, a *pro se* litigant's complaint should not be dismissed unless it appears beyond doubt that the litigant can prove no set of facts in support of his claim that would entitle him to relief. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). From 1971 through 2005, Plaintiff Robert D. Thompson ("Plaintiff" or "Thompson") worked in the fields of sports marketing, event management, and strategic planning. *See* Compl. ¶ 12, ECF No. 1. He alleges that on May 1, 2006, he entered into a contract with the United States Naval Academy ("Naval Academy") and the Naval Academy Athletic Association ("Athletic Association") to provide marketing services to both parties. *Id.* ¶ 14. Plaintiff immediately relocated his family from New Jersey to Annapolis, Maryland. *Id.* ¶ 15. Additionally, Plaintiff alleges that on October 30, 2008, the Naval Academy and Athletic Association extended Plaintiff's contract by three years, to October 31, 2011. *Id.* ¶ 16. Two years later, on October 29, 2010, they extended his contract to October 31, 2013, agreeing that "either party shall have the right to terminate [the] Agreement for any reason upon one hundred eighty (180) days written notice to the other." *See* Contract ¶ VIII, ECF No. 11-2.

According to Plaintiff, recitals in the October 2008 extension specifically acknowledged his role in securing unprecedented sponsorship of the Army-Navy football game. *See* Complaint ¶ 18, ECF No. 1. "In return for the additional years of service conveyed in the [s]econd [e]xtension, and the opportunity to further extend the agreement in the final year of the [s]econd [e]xtension," Plaintiff alleges that he "voluntarily waived

3

significant financial bonuses that otherwise accrued to him under the terms of the [c]ontract and [f]irst [e]xtension." *Id.* ¶ 20. Plaintiff claims that he worked diligently to fulfill his contractual obligations from May 2006 through May 2011, until Defendant Chester S. Gladchuk, Jr., President of the Athletic Association, ("President Gladchuk") "began to falsely suggest that Thompson's services were no longer needed." *Id.* ¶¶ 21-22. Consequently, he claims that an agent of the Defendants informed him on May 20, 2011 that the second extension was terminated and that he should not perform any further services under the contract. *Id.* ¶ 24.

According to Plaintiff, the Navy's Office of General Counsel reviewed the second extension soon after his termination and granted Defendants the authority to settle the second extension, which would have included a severance package and bonuses. *Id.* ¶¶ 27-28. However, Defendant President Gladchuk, with clear disregard for Plaintiff's contractual rights, "refused to pay an invoice for Plaintiff's monthly retainer for May of 2011, and refused to pay subsequent monthly invoices thereafter." *Id.* ¶ 26. Also, without notifying Plaintiff, Defendants forwarded his contract to the Naval Criminal Investigative Service, involving him in a criminal investigation. *Id.* ¶ 30. Furthermore, since Plaintiff was notified of his termination in May 2011, Defendants have dismissed his "every attempt or request to resolve this matter," demonstrating a consistent "callous and malicious indifference to the pain and suffering they have imposed on [Plaintiff] Thompson and his family." *Id.* ¶ 31.

On September 7, 2012, Plaintiff filed *pro se* the present Complaint (ECF No. 1) in this Court. Affording the Complaint a liberal construction, it alleges breach of contract, violation of the Maryland Wage Payment and Collection Law, and breach of the implied covenant of

good faith and fair dealing by Defendants Athletic Association; Vice Admiral Miller, individually and in his official capacity; and President Gladchuk, individually and in his official capacity. Plaintiff seeks compensatory damages in the amount of $1,642,500, nominal damages in the amount of $375,000, owing in part to expenses resulting from the forced sale of his home, and punitive damages in the amount of $3,150,000. On November 20, 2012, the United States filed a Motion to Substitute itself for Defendant Vice Admiral Miller and to Dismiss the Complaint (ECF No. 10), and Defendants Athletic Association and President Gladchuk filed a Motion to Dismiss all claims against them, except for the breach of contract claim against Athletic Association (ECF No. 11). On January 22, 2013 Plaintiff filed a Motion to File a Surreply to the Motion for Partial Dismissal (ECF No. 25). These three Motions are pending before this Court and have been fully briefed.

## **STANDARD OF REVIEW**

I. Rule 12(b)(1) of the Federal Rules of Civil Procedure

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). With respect to a facial challenge, a court will grant a motion to

5

dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.' " *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Md. Dept. of Pub. Safety & Corr. Servs.*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000).

II. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In ruling on such a motion, this Court is guided by the Supreme Court's instructions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

6

(2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which "require complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's *Twombly* decision articulated "[t]wo working principles" courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.) Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Under a plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## ANALYSIS

I. The United States' Motion to Dismiss and Substitute (ECF No. 10)

a. *Motion to Substitute*

The United States of America requests that this Court terminate Vice Admiral Miller as a Defendant in the present action and substitute the United States in his place, pursuant to Rule 21 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2679(d)(1).[3] Pursuant to the authority vested in him by the Attorney General of the United States, the United States

---

[3] Section 2679(d)(1) of Title 28 provides as follows:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

Attorney for the District of Maryland Rod J. Rosenstein certified that Vice Admiral Miller was acting within the scope of his employment as Superintendent of the United States Naval Academy at the time of Plaintiff's allegations. Certification, ECF No. 10-2. In light of the United States Attorney's certification, Plaintiff agrees to the United States' substitution.

"A suit against a federal official for acts performed within his official capacity . . . amounts to an action against the sovereign." *Portsmouth Redev. & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983) (citing *Southern Sog, Inc. v. Roland*, 644 F.2d 376, 380 (5th Cir. 1981); *Ippolito-Lutz, Inc. v. Harris*, 473 F. Supp. 255, 259 (S.D.N.Y. 1979)). In *Portsmouth*, the United States Court of Appeals for the Fourth Circuit construed a contract claim against a federal official as one against the United States because any judgment recovered would be drawn on the public treasury. *See id.* at 474.

Given that Vice Admiral Miller is the Superintendent of the United States Naval Academy, a division of the United States Department of the Navy, and that he was acting within the scope of his employment at the time of Plaintiff's allegations, any contract claim against Vice Admiral Miller in his official capacity constitutes a claim against the United States. Plaintiff concedes this fact. Resp. Opp. Mot. Dismiss 2, ECF No. 19. Additionally, aside from bald allegations of dishonorable conduct, Plaintiff raises no specific claims against Vice Admiral Miller in his individual capacity. Vice Admiral Miller did not sign Plaintiff's contract with the NAAA and USNA, nor was he a party to the contract. *See* Contract, ECF No. 11-2. Consequently, the United States shall be substituted for Defendant Vice Admiral Michael H. Miller in the present case, and all claims against Vice Admiral Michael H. Miller in his individual and official capacities are DISMISSED.

b. *Motion to Dismiss*

The United States moves to dismiss all claims against it, whether for breach of contract, violation of the Maryland Wage Payment and Collection Law ("MWPCL"), breach of the implied covenant of good faith and fair dealing, or tort[4], for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. While Plaintiff acknowledges that the United States is the proper Defendant, he contends that this Court does have jurisdiction to hear his claims.

The Tucker Act, 28 U.S.C. §§ 1346(a) and 1491, grants subject matter jurisdiction to United States District Courts and the United States Court of Federal Claims over actions against the United States founded upon the Constitution, federal statute, executive regulation, or government contract. Section 1346(a), commonly known as the "Little" Tucker Act, grants jurisdiction jointly to District Courts and the Court of Federal Claims over actions seeking monetary relief of no greater than $10,000, while Section 1491, known as the "Big" Tucker Act, grants exclusive jurisdiction to the Court of Federal Claims over actions seeking monetary relief in excess of $10,000. Moreover, in accordance with the well-settled doctrine of sovereign immunity, an action against the federal government can only be maintained where it has expressly consented to suit. *See, e.g., Welch v. United States*, 409 F.3d 646, 650–51 (4th Cir. 2005). "With regard to the federal government and its instrumentalities, sovereign immunity is presumed and cannot be overcome without an

---

[4] While a liberal reading of the Complaint might suggest that Plaintiff intended to raise tort claims, he effectively disclaimed any tort action in his Response in Opposition to the United States' Motion to Dismiss and Substitute (ECF No. 19). Furthermore, even if Plaintiff intended to raise claims sounding in torts, he has not exhausted the administrative requirements of the Federal Tort Claims Act. Therefore, any tort claims against the United States or its employees in their official capacities would be dismissed.

express and unequivocal statutory waiver." *Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 132 F.3d 985, 987 (4th Cir. 1997). The Tucker Act represents a narrow waiver of immunity with regard to contract claims brought against federal agencies. *See id.* at 988.

Since Plaintiff seeks damages in excess of $10,000, this Court lacks subject matter jurisdiction to hear either of his contract claims against the United States under the Tucker Act. Jurisdiction is vested exclusively in the Court of Federal Claims. Additionally, the United States has not waived sovereign immunity with respect to the Maryland Wage Payment and Collection Law, and is therefore immune to suit under that statute. While Plaintiff argues that MD. CODE, STATE GOV'T § 12-201 bars the defense of sovereign immunity in this situation, that provision applies only where the State of Maryland is the defendant. Therefore, the United States' Motion to Dismiss and Substitute (ECF No. 10) is GRANTED. All claims against the United States are DISMISSED for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

II. <u>The Motion for Partial Dismissal Filed by Defendants Athletic Association and President Gladchuk (ECF No. 11)</u>

Defendants Naval Academy Athletic Association and President Gladchuk move to dismiss all claims against them with the exception of the breach of contract claim against the Athletic Association.[5] First, they argue that the breach of contract claim against Defendant President Gladchuk be dismissed because President Gladchuk did not sign the contract nor was he a party to the contract in either his official or individual capacity. Second, they argue that all claims under the Maryland Wage Payment and Collection Law be dismissed because the moneys Plaintiff seeks under the contract are not "wages" under the terms of the

---

[5] Defendant NAAA filed a separate Answer to the breach of contract claim (ECF No. 12).

MWPCL. Finally, they argue that all claims of breach of the implied covenant of good faith and fair dealing be dismissed because Maryland does not recognize a separate cause of action for a breach of that duty. Each argument will be discussed in turn.

  a. *Breach of Contract Claim Against President Gladchuk*

Defendants argue that the breach of contract claim against President Gladchuk be dismissed because President Gladchuk did not sign the contract nor was he a party to the contract in either his official or individual capacity. Plaintiff responds that President Gladchuk is liable under the doctrines of actual and apparent authority

The law of agency provides that an agent acting within the scope of authority granted by his principal may bind his principal in liability to a third party harmed by the agent's actions. RESTATEMENT (THIRD) of AGENCY § 7.03 (2006). Under Maryland law, the authority of an agent to act for a principal may be actual or apparent. *Citizens Bank v. Md. Indus. Finishing Co.*, 659 A.2d 313, 318 (Md. 1995); *Homa v. Friendly Mobile Manor, Inc.*, 612 A.2d 322, 333 (Md. 1992) (citation omitted). "Actual authority is that which is actually granted by the principal to the agent, and it may be express or implied." *Homa*, 612 A.2d at 332–33 (citation omitted); *see also Reserve Ins. Co. v. Duckett*, 214 A.2d 754, 759 (Md. 1965) (clarifying that there can be no implied authority unless there is actual agency). Apparent authority arises from acts or manifestations by an alleged principal to a third party that lead the third party to believe the alleged agent had authority to act on the principal's behalf. *Klein v. Weiss*, 395 A.2d 126, 140 (Md. 1978) (citation omitted).

This Court finds that Defendant President Gladchuk is not liable for breach of contract. First, President Gladchuk was not a party to the contract in either his individual or

official capacities. The contract was an agreement between the Athletic Association, Naval Academy, and Plaintiff. It was signed by Plaintiff and R. C. Parsons, a representative of the Naval Academy. Second, the principles of actual and apparent authority that Plaintiff relies on are means of imposing liability on a principal for the actions of its agent. *See* RESTATEMENT (THIRD) of AGENCY § 7.03 (2006). These doctrines do not create liability in the agent when the principal is the party allegedly at fault. In this case, the contract clearly establishes that the Athletic Association and Naval Academy are the principal beneficiaries of Thompson's efforts. *See* Contract, ECF No. 11-2. Therefore, those doctrines cannot be used to establish the personal liability of President Gladchuk, an agent of the Athletic Association. Thus, Plaintiff has no breach of contract claim against President Gladchuk.

b. *Maryland Wage Payment and Collection Law Claims*

Defendants contend that all claims under the Maryland Wage Payment and Collection Law ("MWPCL") must be dismissed because the moneys Plaintiff seeks under the contract are not "wages" under the terms of the MWPCL. While Plaintiff's Complaint demands relief in the form of contract damages, he now claims that bonuses, which qualify as wages under the MWPCL, are also at issue. Specifically, Plaintiff responds that he was owed certain bonuses prior to signing the most recent extension of his contract, that he waived those bonuses as consideration for the extension, and that those bonuses constitute wages which he is now owed because the Defendants breached their agreement.

The Maryland Wage Payment and Collection Law enforces "the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel*, 819 A.2d 354 (2003). The Court of Appeals of Maryland

12

recently reiterated its bright-line test to determine whether a payment constitutes wages: "only when wages have been promised as part of the compensation for the employment arrangement and all conditions agreed to in advance for earning those wages have been satisfied, will [the Wage Act] requiring payment of wages due apply." *Catalyst Health Solutions, Inc. v. Magill*, 995 A.2d 960, 969 (Md. 2010) (citing *Whiting–Turner*, 783 A.2d 667 (Md. 2001)). Thus, when a payment is exchanged as remuneration for an employee's work but also subject to any additional unfulfilled conditions, it falls outside of the definition of "wages."

Plaintiff cannot assert a claim for past bonuses because he waived his right to redeem them when he signed the second extension. *See* Compl. ¶ 20, ECF No. 1. Additionally, the terms of Plaintiff's contract preclude a claim for all anticipated income over the course of the three-year agreement, because the contract provided that "either party shall have the right to terminate this agreement for any reason upon one hundred eighty (180) days written notice to the other" *See* Contract ¶ VIII, ECF No. 11-2. The most that Plaintiff could demand under the terms of the contract is damages for the 180 days of notice that Defendants allegedly failed to give him, and that would be a claim for contract damages, not wages owed for services already performed. Those moneys could not possibly be considered wages, as Plaintiff did not work after he was terminated, thus any damages he might recover would not be for services performed. Consequently, Plaintiff cannot assert a claim for "wages" under the terms of the Maryland Wage Payment and Collection Law.

Even assuming that Plaintiff could make out a claim for "wages," the Maryland Wage Payment and Collection Law does not apply in this case for another reason. While the statute does not define the term "employee," this Court has previously held that the

13

MWPCL applies to servants or agents of the employer, as opposed to independent contractors. *See Horlick v. Capital Women's Care, LLC*, 896 F. Supp. 2d 378, 388 (D. Md. 2011). In determining whether an individual is an employee, relevant factors include whether the individual engages in an independent profession from the employer or has some ownership interest in the employer's business. *Id.* In this case, the contract makes clear that Plaintiff was a marketing consultant and that the relationship between Plaintiff and the Defendants was a "consulting relationship." *See* Contract ¶ IV.A., ECF No. 11-2. Additionally, it provided that Plaintiff was to perform all services from his own office. *See id.* ¶ II. For these reasons, Plaintiff's role was that of an independent contractor, outside the scope of the Maryland Wage Payment and Collection Law.

c. *Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing*

Defendants argue that all claims of breach of the implied covenant of good faith and fair dealing be dismissed because Maryland does not recognize a separate cause of action for a breach of that duty. Plaintiff responds that Maryland law is unclear on whether breach of the implied covenant of good faith and fair dealing supports an independent action.

Contrary to Plaintiff's assertion, this Court recently reiterated that, "Maryland does not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing." *Barry v. EMC Mortg.*, No. DKC–10–3120, 2011 WL 2669436, at *7 (D. Md. July 6, 2011) (quoting *Baker v. Sun Co.*, 985 F. Supp. 609, 610 (D. Md. 1997)). Instead, the duty of good faith and fair dealing is "merely part of an action for breach of contract." *Id.* (quoting *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp.

2d 785, 794 (D. Md. 2002)). In light of this precedent, Plaintiff's independent claims for breach of the implied covenant of good faith and fair dealing must fail.

For these reasons, the Motion for Partial Dismissal (ECF No. 11) filed by Defendants Naval Academy Athletic Association and President Gladchuk, Jr. is GRANTED. All claims against Defendant President Gladchuk in his individual and official capacities are DISMISSED. Additionally, claims against Defendant Naval Academy Athletic Association for violation of the Maryland Wage Payment and Collection Law, and for breach of the implied covenant of good faith and fair dealing are DISMISSED. Plaintiff's claim for breach of contract against Defendant Naval Academy Athletic Association remains pending.

III. Plaintiff's Motion for Leave to File a Surreply (ECF No. 25)

Plaintiff requests permission to file a surreply to the Motion for Partial Dismissal. He claims that Defendants Athletic Association and President Gladchuk argued for the first time in their Reply brief that "Gladchuk was an agent for the [Athletic Association]" and that "[the Athletic Association] was the principal on the contract." Reply Opp. Leave to File Surreply 2, ECF No. 27. Defendants Athletic Association and President Gladchuk oppose the filing because their Reply simply responded to arguments first introduced by Plaintiff.

Parties are not generally permitted to file a surreply. *See* Local Rule 105.2(a); *Stoyanov v. Mabus*, No. 07–1764, 2009 WL 4664518, at * 8 (D. Md. Dec. 9, 2009). A party moving for leave to file a surreply must show a need for a surreply. *Id.* If a defendant does not raise new legal issues or new theories in its reply brief, there is no basis to permit a plaintiff to file a surreply. *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 862 (D. Md. 2009); *Interphase Garment Solutions, LLC v. Fox TV. Stations, Inc.*, 566 F. Supp. 2d 460, 466 (D. Md. 2008).

By suggesting that "Gladchuk merely acted, if at all, as an agent of the [Athletic Association]" and indicating that the Athletic Association was the principal on the contract, Defendants Athletic Association and President Gladchuk were simply recasting the facts of the case to respond to the actual or apparent authority doctrine introduced by Plaintiff. Defendants were not adding new legal issues or new theories in their reply brief. Therefore, Plaintiff Robert D. Thompson's Motion to File a Surreply (ECF No. 25) is DENIED.

## **CONCLUSION**

For the reasons stated above, the United States' Motions to Substitute and to Dismiss (ECF No. 10) are GRANTED, and the United States will be substituted for Vice Admiral Michael H. Miller as a Defendant in this case. The Motion for Partial Dismissal (ECF No. 11) filed by Defendants Naval Academy Athletic Association and President Chester S. Gladchuk Jr. is also GRANTED. Additionally, Plaintiff Robert D. Thompson's Motion to File a Surreply (ECF No. 25) is DENIED. Accordingly, all claims against Defendants United States are DISMISSED for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. All claims against President Chester S. Gladchuk Jr., individually and in his official capacity, and Vice Admiral Michael H. Miller, individually and in his official capacity, are DISMISSED for failure to state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Additionally, the Maryland Wage Payment and Collection Law claim and claim for breach of the implied covenant of good faith and fair dealing against Defendant Naval Academy Athletic Association are DISMISSED for failure to state a claim for relief pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure.  Plaintiff Robert D. Thompson's single claim for breach of contract against Defendant Naval Academy Athletic Association remains pending.

Dated: August 1, 2013

/s/
Richard D. Bennett
United States District Judge