IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT D. THOMPSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-2676 |
| NAVAL ACADEMY ATHLETIC ASSOCIATION, | * | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Robert D. Thompson ("Mr. Thompson" or "Plaintiff") brings this action against Defendant Naval Academy Athletic Association ("the NAAA" or "Defendant"), alleging that the NAAA breached a written contract between the parties by terminating said contract prior to the expiration of the three-year term.[1] Currently pending before this Court is the NAAA's Motion for Summary Judgment (ECF No. 62) and Mr. Thompson's Motion Objecting to Untimely Errata Submission (ECF No. 68). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons

---

[1] In his Complaint, Plaintiff alleged two additional claims: (1) breach of the implied covenant of good faith and fair dealing; and (2) violations of the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq*. He initially named as defendants the United States; the NAAA; Vice Admiral Michael H. Miller, in his official and individual capacities; and Chester S. Gladchuk, Jr., President of the NAAA, also in his official and individual capacities. On August 1, 2013, this Court dismissed all claims against the United States, Vice Admiral Miller, and President Gladchuk. *See* Mem. Op., 2, ECF No. 29. As to the NAAA, this Court dismissed the breach of the implied covenant of good faith and fair dealing and the Maryland Wage Payment and Collection Law claims, but preserved the breach of contract claim. *See id*.

1

that follow, Defendant Naval Academy Athletic Association's Motion for Summary Judgment (ECF No. 62) is GRANTED and Plaintiff Robert Thompson's Motion Objecting to Untimely Errata Submission (ECF No. 68) is DENIED.[2]

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

Plaintiff Robert Thompson entered into a "Letter Agreement" with Defendant Naval Academy Athletic Association on October 29, 2010.[3] Def.'s Mot. for Summ. J. Ex. 3, ECF No. 62-5. Defendant Naval Academy Athletic Association is a non-profit, non-

---

[2] Mr. Thompson bases his Motion Objecting to Untimely Errata Submission solely on the ground that U.S. Navy Commander Justin Francis, a non-party witness, submitted an errata sheet after the required thirty-day deadline of Rule 30(e) of the Federal Rules of Civil Procedure. Pl.'s Mot. Objecting to Untimely Errata Submission, 2-3, ECF No. 68. According to Mr. Thompson, Commander Francis submitted his errata sheet 37 days after notification. *Id.* Under Rule 30(e)(1), a deponent "must be allowed 30 days after being notified by the officer that the transcript or recording is available." Fed. R. Civ. P. 30(e)(1). The plain language of Rule 30(e)(1) does not set an absolute deadline for submission of errata sheets. *See EBC, Inc. v. Clark Building Systems, Inc.*, 618 F.3d 253, 266 n.12 (3rd Cir. 2010) (explaining that the "natural language of the rule . . . does not preclude courts from . . . forgiving minor untimeliness after the fact"); *but see Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1224 (9th Cir. 2005) (in holding that Rule 30(e)(1) set a hard deadline of thirty days, the court acknowledged that a minor delay may not require exclusion). In this case, a delay of seven days does not justify excluding the errata sheet at issue. Commander Francis only sought to correct errors in the transcript, rather than make substantive changes in his deposition. Accordingly, Mr. Thompson's Motion Objecting to Untimely Errata Submission is DENIED.
[3] This "Letter Agreement" was the third such contract between Mr. Thompson and the NAAA. *See* Mem. Op., at 3. Mr. Thompson first entered into two-year agreement to provide a range of marketing services to Defendant on May 1, 2006. *See* Compl. ¶ 14; Mem. Op., at 3. Before the expiration of the first "Letter Agreement," the parties agreed to a second contract for the same services, but for a period of three years. Mem. Op., at 3. The second "Letter Agreement," drafted by Mr. Thompson, was nearly identical to the first such agreement, but increased Mr. Thompson's monthly retainer and the notice period for early termination. Mem. in Supp. of Def.'s Mot. for Summ. J., 4-5, ECF No. 62-1. The "Letter Agreement" that is the subject of the instant action explicitly superseded and replaced the second agreement between the parties. Def.'s Mot. for Summ. J. Ex. 3, 1, ECF No. 62-5.

governmental organization that "operates the intercollegiate athletic programs of the United States Naval Academy ("the Naval Academy"). Mem. in Supp. of Def.'s Mot. for Summ. J., 2, ECF No. 62-1. As with the prior two contracts between the parties, Mr. Thompson drafted the subject Letter Agreement. *Id.* at 5; *see also* Thompson Dep. 127:21-128:16, Aug. 5, 2014, ECF No. 62-6. Under the terms of the contract, Mr. Thompson was to provide various marketing services for the NAAA for a period of three years. Def.'s Mot. for Summ. J. Ex. 3, at 1-2. The NAAA agreed to pay Mr. Thompson a monthly retainer of $17,500, with the option of a bonus at the discretion of the Deputy of Finance for the Naval Academy.[4] *Id.* at 4. Although the stated term of the contract was November 1, 2010 through October 31, 2013, either party had the right to terminate upon 180 days written notice to the other party. *Id.* at 5.

In January 2011, after a series of government investigations into the Naval Academy's financial records, the Naval Academy established the Financial Management Assessment Group to address the problems identified by the investigations. Mem. in Supp. of Def.'s Mot. for Summ. J., at 7; *see also* Commander Francis Dep. 10:13-11:9, 131:13-136:5, Sept. 3, 2014, ECF No. 62-8. Commander Justin Francis, a member of the Financial Management Assessment Group, reviewed the Letter Agreement between Mr. Thompson and the NAAA. Commander Francis Dep. 10:13-21, 12:13-16:9. He found several issues with the contract

---

[4] As explained by the NAAA, the Naval Academy provides all funding for NAAA contracts, but it is the NAAA that actually pays the contractors. Mem. in Supp. of Def.'s Mot. for Summ. J., at 4. After a Naval Academy officer approves the contractor's invoice, the NAAA pays the contractor, and the Naval Academy reimburses the NAAA. *Id.* Mr. Thompson clearly understood this financial arrangement. *See* Thompson Dep. 25:6-77:7.

and recommended that it be terminated immediately.[5] Def.'s Mot. for Summ. J. Ex. 9, ECF No. 62-11. Vice Admiral Michael H. Miller, then the Superintendent of the Naval Academy, directed the immediate termination, stating that "[his] legal advisers explained that neither its award nor its provisions comported with government contracting regulations." Vice Admiral Miller Aff., ECF No. 62-14.

On May 20, 2011, the acting Deputy of Finance, Lou Giannotti, notified Mr. Thompson in writing that the NAAA would be terminating the Letter Agreement, thus "no further work should be performed under the terms outlined in the Agreement." Def.'s Mot. for Summ. J. Ex. 10, ECF No. 62-12. Following termination, the NAAA paid Mr. Thompson a pro-rated sum for the month of May. Thompson Dep. 152:6-20. Mr. Thompson then submitted an invoice for $105,000, representing his compensation under the contract's 180-day notice period. *Id.* at 160:14-162:12. The NAAA never paid Mr. Thompson the requested $105,000, as the Letter Agreement had become part of a larger investigation into the former Deputy of Finance's actions while serving in that capacity. *Id.* at 169:13-18. All efforts by Mr. Giannotti to obtain authorization to reinstate the relationship with Mr. Thompson were unsuccessful. *Id.* at 134:15-135:13, 137:9-11; *see also* Giannotti Dep. 137:1-21, ECF No. 62-7.

---

[5] Among other issues, Commander Francis stated that the (now former) Deputy of Finance had no authority to enter into the contract in the first place because the Naval Academy reimbursed the NAAA with appropriated funds. Commander Francis Dep. 13:10-13. Only a "valid contracting officer" may enter into contracts using appropriated funds, and the former Deputy of Finance was not such an officer. Mem. in Supp. of Def.'s Mot. for Summ. J, at 7-8; *see also* Commander Francis Dep. 32:7-14.

Plaintiff filed the instant action on September 7, 2012, alleging claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.*[6] Compl. ¶ 36, ECF No. 1. On August 1, 2013, this Court dismissed all claims except Mr. Thompson's claim of breach of contract against the NAAA. Mem. Op., at 2. Subsequently, the NAAA deposited $120,085.48[7] into this Court, pursuant to Rule 67 of the Federal Rules of Procedure. Mem. in Supp. of Def.'s Mot. for Summ. J., at 11. After conducting discovery on Plaintiff's remaining claim, the NAAA moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (ECF No. 62).[8] The NAAA argues that Mr. Thompsons only viable claim for breach of contract is that the NAAA failed to provide the required 180 days notice when it terminated the Letter Agreement.[9] Mem. in Supp. of Def.'s Mot. for Summ. J., at 1. Since Defendant deposited the sum owed under the notice period, it asks this Court for judgment as a matter of law. *Id.* at 1-2. In response, Plaintiff argues that the May 20, 2011 letter did not terminate the Letter Agreement. Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J., 3-5, ECF No. 67. Mr. Thompson further contends that, even if the May

---

[6] Mr. Thompson filed his Complaint *pro se*, but subsequently retained counsel. Mem. Op., at 1.
[7] This figure is the sum of $105,000, the amount allegedly owed under the Letter Agreement's 180-day termination notice period, plus accrued interest. Mem. in Supp. of Def.'s Mot. for Summ. J., at 11. In moving for summary judgment, Defendant conceded that, if its pending Motion is granted, then Plaintiff is "entitled to the 180 days' compensation" deposited with this Court. *Id.* at 2 n.2.
[8] The NAAA and Mr. Thompson each moved for summary judgment in October and November of 2013, respectively. *See* Def.'s Mot. for Summ. J., ECF No. 34; Pl.'s Mot. for Summ. J., ECF No. 45. This Court denied both motions without prejudice by Order dated June 4, 2014 (ECF No. 52).
[9] Although conceding, for purposes of this Motion, that the 180-day notice period is the maximum amount the NAAA would owe Mr. Thompson, the NAAA maintains that the Letter Agreement was never a valid contract. Mem. in Supp. of Def.'s Mot. for Summ. J., at 2 n.2. As Defendant's Motion for Summary Judgment is granted, this Court need not reach this defense.

5

20, 2011 letter did terminate the contract, NAAA must compensate him for the intended three years of the contract. *Id.* at 16-18. Prior to his Response, Plaintiff also filed a Motion Objecting to Untimely Errata Submission (ECF No. 68) regarding an errata sheet submitted by Commander Francis.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*,

477 U.S. at 249-50.  On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

In moving for summary judgment, the NAAA contends that the only possible breach of contract at issue is its failure to compensate Mr. Thompson under the Letter Agreement's 180-day notice period. Since, for purposes of this Motion, the NAAA does not contest the alleged breach, the clear and unambiguous language of the contract controls the sum it owes to Mr. Thompson. Judgment as a matter of law is thus appropriate, as the NAAA contends that no genuine issue of material fact remains regarding the breach and resulting damages. Mr. Thompson, however, argues that the May 20, 2011 letter did not terminate the Letter Agreement because it was not intended to terminate the contract, nor did it follow the Federal Acquisition Guidelines. Even if the May 20, 2011 letter *did* terminate the contract, Mr. Thompson maintains that the NAAA must compensate him for the entirety of the three-year term.

Before considering any damages owed to Mr. Thompson under the Letter Agreement, this Court first must determine whether the May 20, 2011 letter did, in fact,

terminate the subject contract. Under Maryland law, a contract may be terminated "by either party, if such act is in accordance with its terms." *Blum v. Blum*, 477 A.2d 289, 294 (Md. Ct. Spec. App. 1984); *see also Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 671 (Md. 2009); *7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 352, 359 (D. Md. 2004). When a contract includes a notice provision, the failure to provide the requisite notice does not extinguish the moving party's right of termination. *Storetrax.com, Inc. v. Gurland*, 895 A.2d 355, 367-68 (Md. 2006) (citing *Delvecchio v. Bayside Chrysler Plymouth Jeep Eage, Inc.*, 271 A.2d 636, 726 (N.Y. App. Div. 2000)). In *Storetrax.com*, the Maryland Court of Appeals agreed with the New York Supreme Court Appellate Division's conclusion that an employer who did not give an employee the proscribed notice was "liable . . . for certain damages . . . [but] did not forfeit its right to terminate the agreement." *Id.* In this case, the Letter Agreement expressly grants each party the right to terminate the contract in writing "for any reason upon one hundred eighty (180) days written notice to the other [party]." Def.'s Mot. for Summ. J. Ex. 3, at 5. The parties thus clearly contemplated that written notification could effectively terminate the contract. The NAAA, as a non-governmental organization, was not required to adhere to the termination procedures required by the Federal Acquisition Regulations for governmental entities. *See* Def.'s Reply to Pl.'s Opp. to Def.'s Mot. for Summ. J., 6-8, ECF No. 70. Furthermore, the NAAA did not forfeit its right to terminate the contract when it acted to terminate the contract immediately, rather than provide Mr. Thompson with 180 days notice. Mr. Giannotti's efforts to reinstate the relationship between Mr. Thompson and the

NAAA, rather than negating the termination, demonstrate that the NAAA had exercised its contractual right of termination.

Moreover, Mr. Thompson understood that the purpose and effect of the May 20, 2011 letter was to terminate the subject contract. He admitted that he was notified of the termination in May, 2011, and that the letter terminated the contract "because the attorneys [for the Naval Academy] were saying it was an invalid contract." Thompson Dep. 131:10-12; 143:7-12. Further, in an exchange of emails between Mr. Thompson and Mr. Giannotti, Mr. Thompson specifically acknowledged that the May 20, 2011 letter "notified [him] that the above referenced three-party Agreement was terminated." Def.'s Reply to Pl.'s Opp. to Def.'s Mot. for Summ. J. Ex. 15, 2, ECF No. 70-2. Throughout the correspondence, Mr. Thompson repeatedly referred to the contract as terminated by the letter at issue. *See id.* at 2-5. This Court thus can conceive of no genuine dispute of material fact as to the purpose and validity of the May 20, 2011 termination letter.

By terminating the Letter Agreement without the requisite 180 days notice, the NAAA breached the contract and must compensate Mr. Thompson for the appropriate damages. When a party to a contract may terminate that contract at any time upon a specific period of notice to the other party, the injured party may recover only those profits he would have accrued during that period.[10] *Cottman v. State of Maryland, Dept. of Natural Resources*, 443

---

[10] Maryland is not alone in limiting damages for termination without the requisite notice to the net profits of the notice period. *See Enterprise Wheel & Car Corp. v. United Steelworkers*, 269 F.2d 327, 331 (4th Cir. 1959), *rev'd on other grounds*, 363 U.S. 593 (1960) ("[W]here a contract of employment contains a provision allowing termination after a period of notice has been given[,] . . . damages for wrongful discharge are limited to the notice period"); *Strategic Outsourcing, Inc. v. Continental Casualty Co.*, 274 Fed. App'x 228, 232-34 (4th Cir. 2008) (stating that, when a party

A.2d 638, 639-640 (Md. 1982); *see also Storetrax.com*, 895 A.2d at 368. In *Cottman*, the Maryland Court of Appeals explained that, under the thirty-day notice provision in the contract at issue, "[a]ll the appellant could expect under the terms of his lease was a thirty days written notice by the Department of its intention to terminate the lease." *Cottman*, 443 A.2d at 640. This limitation on damages ensures that the aggrieved party does not receive "any more than he would have gained had the terms of the contract been fulfilled." *Id.*

In this case, the Letter Agreement expressly provided that "either party shall have the right to terminate this Agreement for any reason upon one hundred eighty (180) days written notice to the other." Def.'s Mot. for Summ. J. Ex. 3, at 5. As the NAAA terminated the contract on May 20, 2011 without the requisite 180 days notice, Mr. Thompson is entitled to the net profits he would have received during the notice period. Per the terms of the Letter Agreement, the NAAA paid Mr. Thompson a monthly retainer of $17,500.00. *Id.* at 4. Mr. Thompson's damages are thus $105,000, or $17,500 multiplied by the six-month notice period. On October 11, 2013, the NAAA deposited $120,085.48 with this Court, pursuant to Rule 67 of the Federal Rules of Civil Procedure.[11] As this figure represents the $105,000 plus

---

breaches a contract by terminating the contract without the required notice, the injured party may recover only those damages accrued under the notice period); *Odell v. Humble Oil & Refining Co.*, 201 F.2d 123, 128 (10th Cir. 1953) ("Where a contract of employment expressly empowers an employer to terminate the contract upon giving notice, recovery for wrongful breach is limited to the notice period."); *Osborn v. Commanche Cattle Industries, Inc.*, 545 P.2d 827, 831 (Okl. Civ. App. 1975) (explaining that the "courts of other jurisdictions are virtually unanimous in holding that breach of a contract terminable at any time upon notice entitles the aggrieved party to recover only those net profits which he could have earned during the notice period[.]").

[11] Under Rule 67(a) of the Federal Rules of Civil Procedure, "[i]f any part of the relief sought is a money judgment or the disposition of a sum of money . . ., a party . . . may deposit with the court all or part of the money or thing, whether or not that party claims any of it."

accrued interest, the NAAA has satisfied its obligation to pay Mr. Thompson damages for the breach.

In contrast, Mr. Thompson contends that the NAAA must compensate him for the duration of the contract period, rather than merely the notice period. Mr. Thompson's argument rests solely on his alleged belief that the contract would continue for the entirety of the prescribed period. This expectation is premised on two grounds. First, Mr. Thompson argues that he anticipated that the Letter Agreement would run its natural length because he had forfeited his right to accrued bonuses when agreeing to the contract at issue. Second, he asserts that this Court's decision in *Jorgensen v. United Commc'ns Group Ltd. P'ship*, Civ. A. No. 8:10-cv-00429-AW, 2013 WL 66640 (D. Md. Jan. 3, 2013), requires the NAAA to compensate him for the entire contract period. This Court will address each argument in turn.

First, Mr. Thompson argues that, in agreeing to the subject Letter Agreement, he waived bonuses that he had earned under the parties' earlier contracts. Mr. Thompson contends that the preamble of the contract, in which he is recognized for his "initiative and willingness . . . to waive significant bonuses that otherwise accrued . . .," proves that the parties expected the contract to continue for the full three-year term. Def.'s Mot. for Summ. J. Ex. 3, at 1. This argument, however, runs afoul of the parol evidence rule, as it offers extrinsic evidence to contradict clear and unambiguous contractual language. In Maryland, the "construction of contractual language is, in the first instance, a question of law for the court to resolve." *Storetrax.com*, 895 A.2d at 367 (internal citation omitted). When the

11

contractual language is "clear and unambiguous," that language "will not give way to what a party thought the agreement meant or was intended to mean." *County Comm'rs of Charles County v. St. Charles Assocs. Ltd. P'ship*, 784 A.2d 545, 556 (Md. 2001); *see also Ocean Petroleum Co., Inc. v. Yanek*, 5 A.3d 684, 690 (Md. 2010) (explaining that, "unless a contract's language is ambiguous, we give effect to that language as written without concern for the subjective intent of the parties at the time of formation"). Extrinsic evidence may not be used to "vary, alter, or contradict the terms of" unambiguous contractual language. *Ubom v. Suntrust Bank*, 17 A.3d 168, 173 (Md. Ct. Spec. App. 2011).

Yet, by offering evidence of the parties' alleged contrary intentions, Mr. Thompson attempts to thwart the plain language of the Letter Agreement. The contractual language governing termination clearly and unambiguously permits early termination "for any reason upon one hundred eighty (180) days written notice." Def.'s Mot. for Summ. J. Ex. 3, at 5. This language is not conditional, nor does it mention any expectation that the contract should continue for the full term due to Mr. Thompson's waiver of bonuses. Mr. Thompson personally drafted the Letter Agreement, extending the notice period for early termination from the 120-day period of the prior contract to the 180-day period in the subject contract. Def.'s Mot. for Summ. J. Ex. 2, 5, ECF No. 62-4; *cf.* Def.'s Mot. for Summ. J. Ex. 3, at 5. Although the preamble does the accrued (and waived) bonuses, it does not connect that acknowledgment to any expectation that the contract is not terminable. Even if the parties intended the contract to run for the duration of the three-year period, this extrinsic evidence

may not alter or contradict the clear and unambiguous language of the termination provision.

Second, Mr. Thompson argues that this Court's decision in *Jorgensen* requires the NAAA to compensate him for the full three-year contract term. Mr. Thompson's reliance on *Jorgensen*, however, is misplaced. *Jorgensen* held that expectation damages for the breached employment contract at issue are not limited to those damages accrued during the notice period. 2013 WL 66640 at *7-9. In so holding, this Court placed particular emphasis on the contractual language, which allowed for termination "[w]ithout [c]ause, upon *not less than* 30 days prior written notice of termination from the Company to Jorgensen[.]" *Id.* at *1 (emphasis added). This Court concluded that the inclusion of "not less than," rather than language setting a fixed notice period, supported the "inference that the firing could have occurred upon 30 days' notice *or more*." *Id.* at *8 (emphasis in original).

In contrast, the Letter Agreement between Mr. Thompson and the NAAA specifically required 180 days written notice if either party chose to terminate the contract before the end of the stipulated three-year term. Conditional language, such as that modifying the notice period in *Jorgensen*, is absent in this case. The fixed 180-day period cannot support a belief that a longer notice period was required. Mr. Thompson, who drafted the contract, chose the absolute language employed in the termination provision. Like a drafter of any contract, he gave careful consideration to each provision, even amending the current Letter Agreement to increase the length of the notice period from 120 to 180 days. Thompson Dep. 127:21-128:16. Although Mr. Thompson argues that he did

not anticipate early termination, the absolute language of the termination provision supports the opposite conclusion.

In sum, the NAAA breached the Letter Agreement when it terminated the contract on May 20, 2011 without providing 180 days written notice to Mr. Thompson. Under the clear and unambiguous language of the contract, the NAAA must compensate Mr. Thompson for his expected net profits during the notice period. As the NAAA deposited the requisite sum with this Court, it is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant Naval Academy Athletic Association's Motion for Summary Judgment (ECF No. 62) is GRANTED and Plaintiff Robert Thompson's Motion Objecting to Untimely Errata Submission (ECF No. 68) is DENIED.

A separate Order follows.

Dated: December 19, 2014

                /s/
              Richard D. Bennett
              United States District Judge